May Term,
1841.

JUDAH
v.
BRANDON.

Judah, Administrator, *v.* Brandon.

A defendant may waive the right of set-off given him by statute, and bring a cross action for his demand.

An administrator may be sued in chancery for a debt due to the complainant from the intestate.

The statute of limitations may be pleaded to a suit in chancery on an unwritten contract.

The statute of 1835 relative to the statute of limitations, has relation only to debts when pleaded in defence of a suit by way of set-off.

*Tuesday,*
*May 25.*

APPEAL from the *Monroe* Circuit Court.

BLACKFORD, J.—*Jesse Brandon* filed a bill in chancery in 1837, for a perpetual injunction of a judgment at law, which had recently been obtained against him by *Judah,* administrator of *Armstrong Brandon.* The object of this suit was to obtain an injunction of the judgment, by showing that the estate of *Armstrong Brandon* was indebted to the complainant, for demands recoverable in chancery, to as large an amount as the judgment. The defendant, in his answer, insists that the Court has no jurisdiction of the demands, and relies also on the statute of limitations. With respect to the statements of the bill, the defendant, being an administrator, has but little information. The Circuit Court, upon the pleadings, exhibits, and depositions, granted the injunction.

The following are the facts: The complainant and *Armstrong Brandon,* the intestate, were partners at *Corydon* for several years, prior to 1824, in publishing a newspaper called "*The Indiana Gazette.*" In that year they dissolved the partnership. At the time of the dissolution, the complainant bought the intestate's half of the printing press, type, furniture, &c., belonging to the printing office, for the sum of 500 dollars, and gave him a bond for the amount, payable in five equal annual instalments. The intestate, at the same time, gave the complainant a writing obligatory, binding himself to attend to the collection of the debts due to the firm, and to the payment of those due by it, and to account to the complainant for his half of the net proceeds. As the sum of 500 dollars exceeded the value of the intestate's half of the press, types, &c., he was to charge nothing for settling

up the business of the firm. The intestate told one of the witnesses that the debts due the firm exceeded 2,000 dollars, and that when the debts were collected, the complainant would have money left after paying for the press, &c. The intestate paid the complainant, at various times, 274 dollars and 22 cents, on account of debts due the firm that had been collected. These payments to the complainant were as follows: 30 dollars to a wagoner for the complainant in 1824; 50 dollars to the complainant in 1825; the sum of 100 dollars in 1825, which last payment was indorsed on the bond given for the press, &c., as a credit "from a collection of the old Gazette accounts;" the sum of 79 dollars and 22 cents in 1826, which was also indorsed on the bond as a credit from the same source; and 15 dollars paid the complainant in 1826. One of the witnesses states that the intestate informed him, in 1826, that the complainant *was to have* a credit of 100 dollars towards paying for the press, &c., for public printing which the firm had done. It is proved by another witness, that the complainant, as a deputy, assisted the intestate in his office of postmaster at *Corydon*, from 1817 until the fall of 1824; and that his services as such deputy were worth, at least, from 30 to 40 dollars a year. The complainant paid a small sum as costs for the firm ten or twelve years ago, and the defendant collected, about the same time, a small amount due the firm.

The judgment sought to be enjoined by this suit is for 484 dollars and 71 cents with costs, and was recovered on the bond given by the complainant for the printing press, &c. at the time the partnership was dissolved.

The defendant contends, that the claims set out in the bill, if valid, should have been pleaded by way of set-off in his suit on the bond for the price of the printing press, &c.; but this ground cannot be supported. The statute of set-off was passed for the benefit of defendants, and is not compulsory: they may waive the right it gives if they choose, and bring cross-actions for their demands. Babington on Set-off, 3.— *Brown* v. *Pigeon*, 2 Camp. 594.—*Eastmure* v. *Laws*, 5 Bingh. N. C. 444.

It is also contended by the defendant, that the complainant's demands are not of chancery but of common law juris-

diction. This we think is a mistake. The character of the defendant, he being an administrator, gives the Court of chancery jurisdiction. Executors and administrators hold the property of the estate in trust for the creditors and others interested; and a Court of chancery may enforce the execution of the trust, by requiring such trustees to account and pay to the creditors, &c. *Adair* v. *Shaw*, 1 Sch. & Lef. 262.—*Attorney General* v. *Cornthwaite*, 2 Cox, 44.—*Morrice* v. *The Bank of England*, Talb. Eq. Cas. 217. The same point is decided in *Martin* v. *Densford*, 3 Blackf. 295.

The defendant also relies on the statute of limitations. That statute applies to all the claims in the bill, except the one founded on the bond given by the intestate for the collection of the partnership debts. The complainant is mistaken in supposing that the demands for services as deputy postmaster, &c. are saved from the statute of limitations by the statute of 1835. The statute last-named has relation only to debts when pleaded in defence of a suit by way of set-off. But here, the complainant institutes an original, independent suit to recover the claims in question; and the statute of 1835 has no application to the case. R. S. 1838, p. 462.

We think the complainant was entitled to a credit, in 1826, on the bond for the price of the press, &c., of 100 dollars, which he has not received. This credit should have been given for collections made by the intestate of partnership debts. The intestate's acknowledgment of his liability for that sum is proved, and his failure to give a credit for it or pay it, is a breach of the condition of his bond. The defendant contends that that sum of 100 dollars was credited on the bond for the press, &c.; but the evidence is otherwise. The indorsement alluded to by the defendant was on account of collections "*of the old Gazette accounts.*" The money spoken of by the witness was for *public printing*, which had been done by the firm. Besides, the indorsement in question was made in 1825; but the witness speaks of a credit which, in 1826, was to be afterwards given. These circumstances seem to show, that the sum of 100 dollars referred to by the witness, is not the same with that indorsed on the bond.

We consider, therefore, that there is due from the intes-

tate's estate to the complainant the sum of 100 dollars with interest from the time the debt accrued.

May Term, 1841.

*Per Curiam.*—The decree so far as it enjoins the sum of 166 dollars of the judgment at law is affirmed; and so far as it enjoins the residue of the judgment, it is reversed, &c.

*A. Kinney,* for the appellant.

*C. P. Hester,* for the appellee.