BARTON and Others *v.* BRYANT and Others.

May Term, 1850.

| | | |
|---|---|---|
| BARTON | 2 | 189 |
| v. | 127 | 304 |
| BRYANT. | 2 | 189 |
| | 137 | 285 |
| | 2 | 189 |
| | 153 | 7 |

Bill in chancery by *A., B., C.,* and *D.,* in 1845, against *E.* and the heirs of *F.,* alleging that *A.,* in 1841, recovered a judgment against *G.* and *F.;* that execution issued and returned no property of *F.* found; that *F.* died in 1843, intestate; that *B.* and *C.* recovered judgment against the administrator and execution returned no goods found; that *D.,* in 1845, recovered judgment against said administrator on which no execution had issued; that *F.,* in his lifetime, in 1841, for the purpose of defrauding his creditors, fraudulently mortgaged his personal property and conveyed his real estate to *E.;* that in 1843, in the lifetime of *F.,* a bill was filed by *H.,* and *I.,* and *J.,* against *E.* and *F.,* alleging that they had obtained judgments against *F.;* that before the rendition of the judgments, *F.,* contriving with *E.* to defraud his creditors, mortgaged to *E.* all his personal, and conveyed to him all his real estate, which last bill prayed that said conveyances be declared fraudulent and void. The present bill states that said conveyances were decreed fraudulent and void, and that the property should be subject to the judgments of said complainants. The present bill further states, that there is, under said decree, a memorandum signed *D. Mace,* alleging that said decree was set aside and discharged; that said *G.,* when judgment was rendered against him and *F.,* was, and has been ever since, notoriously insolvent; that said conveyances were made to defraud the creditors, &c. The bill prays that the now complainants be decreed to have the benefit of said decree; that an account be taken of what is due them; that, in default of payment, said property be sold, and for such other relief as may be equitable. General demurrer to the bill sustained. *Held,* that the only effect of said decree was to set aside the conveyances as fraudulent and void; that the memorandum under it is entitled to no consideration; that the conveyances must be considered void as to all the creditors; and the property of the intestate liable as if the conveyances had never been made.

*Held,* also, that *D.* may be considered an existing creditor.

*Held,* also, that the bill does not show the complainants entitled to a decree for the sale of the property for the payment of their demands without inquiring as to the rights of other creditors.

ERROR to the *Tippecanoe* Circuit Court.

BLACKFORD, J.—*The State Bank of Indiana, Barton* and *Favorite,* and one *Ross,* in *May,* 1845, filed a bill in chancery against *Joshua Baker* and the heirs at law of *Allen Lupton,* deceased. The bill alleged that the said bank, in *August,* 1841, recovered a judgment against one *Benbridge* and said *Lupton* for 305 dollars; that, in *September,* 1841,

*Thursday, September 26.*

an execution issued on said judgment, which was return-ed on the 15th of *November* following no property of said *Lupton* found; that said *Lupton* died in *March*, 1843, in-testate; and that, in the summer or fall following, said *Baker* and one *James Lupton* administered on his estate. The bill further alleges that said *Barton* and *Favorite*, in *November*, 1844, recovered judgment against said admi-nistrators, as such, for 343 dollars, to be levied of the as-sets of the intestate; that, in *January*, 1845, an execution issued on the last named judgment, which was returned in *May* following no goods or chattels of the intestate; that said *Ross*, in *February*, 1845, recovered judgment against said administrators, as such, for 143 dollars, to be levied of the assets of the intestate, upon which last named judgment no execution had issued ; that said *Allen Lupton*, in his lifetime, to-wit, about the 14th of *April*, 1841, for the purpose of defrauding the complainants, and his other creditors, fraudulently mortgaged all his personal property, and conveyed in fee all his real estate, to said *Baker*. The bill further alleges that in *January*, 1843, in the lifetime of said *Allen Lupton*, a bill in chan-cery was filed by *Burrows* and *Hall*, and one *Johnson* against said *Allen Lupton* and said *Baker*, containing the following allegations : First, that the complainants in the last named bill had obtained judgments respectively, against said *Allen Lupton;* secondly, that before the ren-dition of the last named judgments, to-wit, about the 14th of *April*, 1841, said *Allen Lupton*, contriving with said *Baker* to defraud the creditors of the former and for the purpose of defrauding them, mortgaged to said *Baker*, to secure the payment of two certain notes, the following personal property, to-wit, one two horse carriage, &c., (various kinds of personal property are here described), being all the personal property of the mortgagor, except what the law exempted from execution; thirdly, that in pursuance of said corrupt design, said *Allen Lupton*, about the 10th of *April*, 1841, conveyed all his real estate without consideration to said *Baker*, which estate

is as follows, (various tracts of land are here described), which last named bill prayed that said conveyances should be declared fraudulent and void.

The present bill further states that, at the *February* term, 1843, the Court decreed in said suit of *Burrows* and others, that said conveyances were fraudulent and void, and that the property conveyed should be subject to the judgments of the complainants in that suit. The present bill further states that there is, under said decree, a memorandum signed *D. Mace*, which memorandum alleges that said decree was set aside and discharged. The present bill further states that said *Benbridge* was, when said judgment against him and said *Allen Lupton*, was rendered, and has ever since continued to be, notoriously insolvent; that said conveyances were made to defraud the creditor of the grantor; that the now complainants are entitled to the benefits of said decree; that the debts for which the judgments in favor of the *State Bank* and in favor of *Barton* and *Favorite* were rendered, were in existence when said conveyances were executed; that the inventory and sale-bill show the personal assets of said decedent's estate to be only about 137 dollars, except a certain note given by said *Baker* to the decedent, in consideration of said fraudulent sale, which note, by the understanding of the parties to it, was never to be paid. The present bill states in one place, that the debt for which *Ross's* judgment was obtained was contracted after the execution of said conveyances, and, in another place, that such debt was in existence when said conveyances were executed. The prayer of this bill is, that the non-complainants may be decreed to have the benefit of said decree; that an account be taken of what is due to them; and, in default of payment thereof, said property be sold for the payment of the same; and for such other relief as may be equitable.

General demurrer to the bill and demurrer sustained.

By the decree mentioned in the bill, the conveyances were set aside as fraudulent and void. That was the only effect of the decree. It is true the decree declares

that the property shall be subject to the judgments of these complainants, but that amounts to nothing. The property was as much subject to these judgments without such declaration as with it. That decree, we think, must be considered in force. The memorandum at the foot of it is entitled to no consideration. It does not appear to have been made by order of the Court, nor does it appear that Mr. *Mace*, if he signed the memorandum, had any authority to do so. The question, therefore, whether the complainants in the first suit could discharge the decree so as to affect the other creditors need not be examined. Our opinion is, that, in consequence of the decree, the conveyances must be considered void as to all the creditors of the grantor, and that, upon his death, the liability of the property to the intestate's debts was the same as if the conveyances had never been made. The following authorities are to this point: In a suit in chancery by some of the creditors of a deceased debtor on behalf of themselves and the other creditors to set aside a settlement as fraudulent, it was held that if the settlement was void as to any of the creditors it was void as to all. The Court said: "If it be once shown that it is a deed which, as against any of the creditors cannot stand, then the property becomes assets and is applicable to the payment of debts generally; all the creditors come in at whatever times their debts may have arisen. That is decided." *Richardson* v. *Smallwood*, Jacob, 552. The cases of *Bethel* v. *Stanhope*, Cro. Eliz. 810, and *Shears* v. *Rogers*, 3 Barn. and Adol. 362, are to the same effect. The decisions in those cases were made after the decease of the grantors, but that circumstance, we think, can make no difference. Mr. *Williams* says: "Where a deed is set aside as fraudulent against any of the creditors of the deceased, the property becomes assets and subsequent creditors are let in. An assignment within the statute of 13th Eliz. C. 5, is utterly void against creditors, and the property assigned is assets in the hands of the executors." 2 Will. on Exrs. 1195. The same writer also says: "Where a settlement is made after marriage, and

there being creditors at the time, it is, on that account, declared fraudulent, the property so settled becomes part of the assets and all subsequent creditors are let in to partake of it. 1 Will. on Exrs. 532. The case before us is one of creditors whose claims existed when the conveyances were made. The bill expressly alleges that the *State Bank* and *Barton* and *Favorite* were such creditors. As to *Ross*, the statements on the subject in the bill are contradictory, and the defendant may take which statement he pleases. *Vernon* v. *Vernon*, 2 M. & Craig. 145. *Ross*, therefore, may also be considered an existing creditor.

It appears from what we have said that the complainants in the present suit are entitled to the benefits of the decree referred to in their bill. That decree, however, is nothing more than this, that the conveyances in question are void as to all the decedent's creditors. After the rendition of that decree, the creditors of the grantor had a right to proceed to the collection of their debts as if said conveyances had never been made. The present suit, therefore, so far as it prays to have the benefit of said decree, or to have the conveyances set aside, is useless, and, of course, not sustainable.

Another question in the cause is, whether the bill shows the complainants entitled to a decree for a sale of the property for the payment of their demands, without any inquiry as to the rights of other creditors? We do not think it does. Whilst a judgment-debtor is living and his property is subject to execution, (there being a fraudulent conveyance in the way,) the debt cannot be collected in chancery out of that property. The reason is, the creditor has a plain remedy at law. In the present case, however, the debtor is deceased, and administrators have been appointed to settle his estate. In *England*, and in some of our sister states, a creditor's bill, after the debtor's decease, will lie in chancery. The suit may be brought by a single creditor for his own debt, against the executors or administrators, but, unless assets are admitted, he only gets an order for payment in a due course

of administration. But the bill is usually filed by a few of the creditors on behalf of themselves and the other creditors, against the proper representatives of the deceased debtor, for an account of the estate for the benefit of all the creditors. In such case, upon proper proof, a decree will be rendered for the administration of the assets in chancery, which decree will stand as a judgment for all the creditors. The assets will be afterwards applied in a due course of administration. Story's Eq. Pl. ss. 99 to 101. That our Courts of chancery have such jurisdiction has been already decided by this Court. *Judah* v. *Brandon*, 5 Blackf. 506. But, a single creditor or a few of the creditors of the deceased debtor, cannot, by a suit in chancery, have the property of the estate sold for the payment of their own demands, as specially prayed for by this bill, without any inquiry as to the rights of other creditors.

There is one other question, and that is, whether the complainants could claim, under the present bill, a decree for the administration of the estate, in chancery, of the deceased debtor. There is no doubt that the bill ought, as a creditor's bill, to have made both the administrators defendants, and that it ought also to have stated that it was filed on behalf of the complainants and the other creditors; but whether these objections, or either of them, can be reached by general demurrer, needs not now be determined. The bill describes the debts due by said *Allen Lupton* to the complainants respectively; it alleges the decease of the debtor; it describes the property, real and personal, which was left by the decedent; it states who are his administrators and his heirs; and it makes the heirs and one of the administrators the defendants. The bill prays that the complainants may have the benefit of the decree mentioned in it; that an account be taken of what is due to the complainants; and that, in default of payment thereof, the property described be sold for the payment of the same; and for general relief. There is no special prayer for the administration of the estate under the direction of the Court of chancery. On

the contrary, the special relief prayed is inconsistent with a decree for an administration of the estate, nor is it justified by the facts alleged in the bill. There is, to be sure, a general prayer, but that will not help such a case as this. The doctrine on this subject is correctly stated by a late writer to be as follows: "This part of the bill, therefore, (the prayer for relief,) should contain an accurate specification of the matters to be decided; and, in complicated cases, the framing of it requires great care and attention; for where the prayer does not extend to embrace all the relief to which the plaintiff may, at the hearing, show a right, the deficient relief may be supplied under the general prayer, yet such relief must be consistent with that specially prayed as well as with the case made by the bill, for the Court will not suffer a defendant to be taken by surprise, and permit a plaintiff to neglect and pass over the prayer he has made and take another decree, even though it be according to the case made by the bill." 1 Danl's. Ch. Pr. 435.

The following is a similar case, as to this matter, with the one before us. A creditor, claiming to have an equitable lien on a house and lot left by his deceased debtor, filed a bill which prayed that the premises might be sold, and the plaintiff be paid out of the proceeds, and for general relief. The bill was answered and proof taken. The Court said, "the notion that the plaintiff had an equitable lien upon the land because the note he indorsed was applied in part payment of the purchase-money, is entirely without foundation. Nor is the bill framed for an account of assets, or so as to entitle the plaintiff to proceed in this Court, as a creditor. The personal estate is the first and primary fund for the payment of debts, and the plaintiff ought to have resorted, at law, to that fund. He can only come here for an account and discovery of assets, and on the ground of a trust in the executor or administrator to pay debts. 3 Atk. 575.—1 Sch. & Lef. 262. The bill was not intended for that purpose, but only to enforce a sale of the land, by reason of the supposed lien." The Court concluded by saying, "with-

out having formed any decided opinion one way or the other on this subject, (the jurisdiction of the Court as to administration of assets,) it is sufficient to observe, in this case, that the bill was not intended or adapted for any such general purpose and it must be dismissed." *McKay* v. *Green*, 3 John. Ch. R. 56.

We are, therefore, of opinion, that the bill in this case is insufficient on general demurrer.

*Per Curiam.*—The decree is affirmed.

*Z. Baird* and *R. Jones*, for the plaintiffs.

*J. Pettit, S. A. Huff,* and *D. Mace,* for the defendants.